Kathleen Jorrie (SBN 121578)
Jeffrey D. Wexler (SBN 132256)
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Telephone: 213.488.7100
Facsimile: 213.629.1033
kathy.jorrie@pillsburylaw.com
jeffrey.wexler@pillsburylaw.com

Attorneys for Plaintiff AEG Presents LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| AEG PRESENTS LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>YSL TOURING LLC, a Georgia limited liability company; JEFFERY LAMAR WILLIAMS, an individual; and YOUNG STONER LIFE PUBLISHING, LLC, a Georgia limited liability company,<br><br>Defendants. | Case No. 2:20-cv-11601-VAP-PVC<br><br>**FIRST AMENDED COMPLAINT FOR: (1) BREACH OF CONTRACTS; (2) SPECIFIC PERFORMANCE OF SECURITY AGREEMENTS; (3) DECLARATORY RELIEF; (4) INJUNCTIVE RELIEF; (5) JUDICIAL FORECLOSURE; (6) FRAUDULENT MISREPRESENTATION; AND (7) FRAUDULENT PROMISES MADE WITHOUT INTENT TO PERFORM**<br><br>**DEMAND FOR JURY TRIAL** |

1

4830-1539-1704

Plaintiff AEG Presents LLC ("AEG") brings this Complaint against Defendants YSL Touring LLC ("YSL"), Jeffery Lamar Williams ("Mr. Williams"), and Young Stoner Life Publishing, LLC ("YSLP") (collectively "Defendants") and alleges as follows:

## JURISDICTION AND VENUE

1.      This is a civil action seeking monetary damages, specific performance, and injunctive relief on claims brought under California law for breach of contracts, specific performance of security agreements, declaratory relief, injunctive relief, judicial foreclosure, fraudulent misrepresentation, and fraudulent promises made without an intent to perform, all arising out of the failure of YSL and Mr. Williams to pay AEG about $6,000,000 owed under various agreements entered into in 2016 and 2017 with regard to concert tours by Mr. Williams, who performs under the name Young Thug.  The Court has subject matter and original jurisdiction over all claims for relief asserted herein pursuant to 28 U.S.C. § 1332(a) because: (a) complete diversity of citizenship exists between AEG, on the one hand, and Defendants, on the other hand (Mr. Williams is a resident of Georgia for purposes of diversity jurisdiction, as are YSL and YSLP, which are Georgia limited liability companies whose sole member Mr. Williams is a resident of Georgia); and (b) the amount in controversy exceeds $75,000, exclusive of interest and costs.

2.      The Court has personal jurisdiction over Defendants because: (a) they regularly conduct business in California; (b) YSL and YSLP have their principal places of business in Los Angeles, California; and (c) YSL and Mr. Williams entered into agreements with a California company consenting to personal jurisdiction in Los Angeles County, California.

3.      Venue is proper in this judicial district: (a) pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district; and (b) because YSL and Mr. Williams entered into agreements with AEG consenting to venue in Los Angeles County, California.

2

## THE PARTIES

4.      AEG is a Delaware limited liability company.  AEG's sole member is Anschutz Entertainment Group, Inc., a Colorado corporation.

5.      AEG is informed and believes, and based thereupon alleges, that YSL is a Georgia limited liability company and that Mr. Williams is its sole member.

6.      AEG is informed and believes, and based thereupon alleges, that Mr. Williams is a resident of Georgia.  Mr. Williams is a rapper, singer, and songwriter who is professionally known as Young Thug.

7.      AEG is informed and believes, and based thereupon alleges, that YSLP is a Georgia limited liability company and that Mr. Williams is its sole member.

8.      AEG is informed and believes, and based thereon alleges, that there exists, and at all times herein mentioned there existed, a unity of interest and ownership between Mr. Williams and YSLP, such that any individuality and separateness between Mr. Williams and YSLP has ceased, and Mr. Williams is the alter ego of YSLP.  AEG is further informed and believes, and based thereon alleges, that adherence to the fiction of the separate existence of YSLP as an entity distinct from Mr. Williams would permit an abuse of the corporate privilege and would promote injustice.

## FACTUAL ALLEGATIONS

### A.    The 2016 Agreements.

9.      AEG (at that time known as AEG Live LLC) and YSL entered into an Artist Agreement dated as of November 8, 2016 (exclusive of its exhibits, the "2016 Artist Agreement") pursuant to which YSL agreed to grant AEG the exclusive right to promote 20 concert performances by Mr. Williams in North America during a stated term.

10.     YSL executed a promissory note dated as of October 14, 2016 in the original principal amount of $300,000 in favor of AEG in connection with the 2016 Artist Agreement (the "2016 Note").

3

11.     On or about October 14, 2016, Mr. Williams executed an Inducement Letter (Guaranty) in connection with the 2016 Note (the "2016 Guaranty").  (The 2016 Artist Agreement, the 2016 Note, and the 2016 Guaranty are referred to collectively herein as the "2016 Agreements.")

12.     In Paragraph 1 of the 2016 Guaranty, Mr. Williams agreed "to perform and discharge all of [YSL]'s obligations, warranties and undertakings contained in the [2016] Note."

13.     YSL owes AEG $126,324.60 under the 2016 Artist Agreement and the 2016 Note, which debt is comprised of an unearned advance of $120,000 and $6,324.60 in vendor payments above artist earnings, as itemized in Exhibit A to a letter sent by AEG to YSL and Mr. Williams on August 29, 2019.  Pursuant to the 2016 Agreements, YSL and Mr. Williams are obligated to pay such amounts to AEG.

14.     This total sum owing under the 2016 Artist Agreement and the 2016 Note was liquidated by no later than August 29, 2019.

15.     Hence, prejudgment interest at the legal rate of 10% per annum (which equates to a daily rate of $34.61) has accrued and is continuing to accrue on such sums since no later than August 29, 2019.

**B.     The 2017 Agreements.**

16.     AEG, on the one hand, and YSL, on the other hand, entered into an Artist Agreement dated as of July 10, 2017 (inclusive of the 2017 Note defined in paragraph 17 below) (the "2017 Artist Agreement").  In Paragraph 1(b) of the 2017 Artist Agreement, YSL agreed to grant AEG the exclusive right to promote live concert performances by Mr. Williams throughout the world for a stated term.

17.     In Paragraph 18(b) of the 2017 Artist Agreement, YSL represented and warranted, *inter alia*, that it and Mr. Williams "together have a sufficient net worth to comply with their respective obligations" under the 2017 Note (defined in paragraph 17 below) and the 2017 Guaranty (defined in paragraph 18 below).

4830-1539-1704

18.     Under the terms of the 2017 Artist Agreement, AEG advanced the sum of $5,250,000 to YSL (the "Advance"), and in connection therewith, YSL executed a promissory note dated as of July 10, 2017 in the original principal amount of $5,250,000 in favor of AEG (the "2017 Note").  A true and correct copy of the 2017 Note, as redacted, is attached hereto as Exhibit A.

19.     On or about July 10, 2017, Mr. Williams executed an Inducement Letter (Guaranty) in connection with the 2017 Artist Agreement and the 2017 Note (the "2017 Guaranty").  A true and correct copy of the 2017 Guaranty, as redacted, is attached hereto as Exhibit B.  (The 2017 Artist Agreement (inclusive of the 2017 Note) and the 2017 Guaranty are referred to collectively herein as the "2017 Agreements.")

20.     In Paragraph 1 of the 2017 Guaranty, Mr. Williams agreed "to perform and discharge all of [YSL]'s obligations, warranties and undertakings contained in the [2017 Artist Agreement] (which for the avoidance of doubt includes the [2017 Note]."

21.     In Paragraph 3 of the 2017 Guaranty, Mr. Williams represented and warranted, *inter alia*, that "all of the representations, warranties and agreements of [YSL] contained in the [2017 Artist] Agreement are and shall remain true and correct."

22.     AEG is informed and believes, and based thereon alleges, that as of the time of the 2017 Agreements YSL and Mr. Williams together did not have a sufficient net worth to comply with their respective obligations under the 2017 Artist Agreement and the 2017 Guaranty.  AEG is further informed and believes, and based thereon alleges, that as of the time of the 2017 Agreements, Mr. Williams was in default of his obligation to pay at least $2.2 million based on his personal guaranty of a loan for residential property.

23.     Despite having granted AEG the exclusive right to promote Mr. Williams' concert performances under the terms of the 2017 Artist Agreement, YSL

5

and Mr. Williams immediately failed and refused to honor their respective obligations under the 2017 Agreements by, among other things, disregarding AEG's rights, performing concerts without AEG's involvement, and retaining all proceeds generated therefrom.

24.     AEG is informed and believes, and based thereon alleges, that as of the time of the 2017 Agreements YSL and Mr. Williams did not intend to perform their respective obligations under the 2017 Agreements with regard to (a) paying monies owed to AEG pursuant to the 2017 Agreements and (b) honoring AEG's exclusive right to promote live concert performances by Mr. Williams throughout the world for a stated term.

25.     YSL never paid to AEG any portion of the $5,250,000 in principal owed under the 2017 Note, nor any interest thereon.

26.     In addition, YSL received revenue from Mr. Williams' concert performances that it was contractually required to pay to AEG under the terms of the 2017 Artist Agreement in excess of any remuneration due from such performances in a total amount of at least $363,700, and it failed and refused to pay such revenue to AEG.

**C.     The Opt-Out Notice.**

27.     In response to YSL's and Mr. Williams' failure to honor their respective obligations under the 2017 Artist Agreement and their total disregard for AEG's rights thereunder, AEG decided to exercise its right under the 2017 Artist Agreement to opt out of any further obligation to promote Mr. Williams' concerts and to end the term of such agreement early.

28.     AEG delivered to YSL and Mr. Williams a Notice of Exercising Opt-Out Right dated August 29, 2019 (the "Opt-Out Notice").

29.     In the Opt-Out Notice, AEG exercised its rights to opt out of the continued promotion of tour events and to end the term of the 2017 Artist Agreement early, as provided for by Paragraph 15(c) of the 2017 Artist Agreement.  In the Opt-

Out Notice, AEG designated September 4, 2019 as the last day of the Term under the 2017 Artist Agreement.

30.    As the result of AEG's exercise of its opt-out rights, YSL was to be credited with a payment of $250,000 under the 2017 Note as of the date of the Opt-Out Notice, which credit was acknowledged in the Opt-Out Notice.

31.    Under Paragraph 15(c) of the 2017 Artist Agreement and the terms of the 2017 Note, YSL agreed to repay $5,000,000 of the Advance (plus interest that accrued under the 2017 Note) to AEG.

32.    The Opt-Out Notice made demand on YSL and Mr. Williams to pay the principal sum due and owing under the 2016 Agreements and the principal and interest due and owing under the 2017 Agreements (collectively, the "Agreements") as follows:

(a)    The principal balance of the 2017 Note, in the amount of $5,000,000 (the "2017 Principal Debt");

(b)    Interest that had accrued on the unpaid principal amount owing under the 2017 Note at the rate of six percent (6%) as of the date of the Opt-Out Notice, in the amount of $307,433.92 (the "2017 Interest Debt");

(c)    The sum of $363,700 due and owing under the 2017 Artist Agreement as the result of YSL's failure to pay AEG its share of pool revenue received by YSL (the "2017 Additional Debt"); and

(d)    The sum of $126,324.60 due and owing under the 2016 Artist Agreement and the 2016 Note (the "2016 Debt").

33.    As the result of the Opt-Out Notice, the Term of the 2017 Agreement ended on September 4, 2019.  Hence, the Maturity Date under the 2017 Note (the "2017 Note Maturity Date") occurred on October 4, 2019 (*i.e.*, 30 days after the end of the Term).

7

4830-1539-1704

34.     Interest continued to accrue under the terms of the 2017 Note from August 29, 2017 through and including the 2017 Note Maturity Date at the rate of six percent (6%) per annum (*i.e.*, at the daily rate of $821.92), resulting in an additional interest amount being due as of the 2017 Note Maturity Date of $28,767.72.  Hence, as of the 2017 Note Maturity Date, the 2017 Interest Debt had increased to $336,201.64, making the total principal plus interest due under the 2017 Note as of the 2017 Note Maturity Date $5,336,201.64; and when combined with the 2017 Additional Debt of $363,700.00, the total amount owing to AEG by YSL under the 2017 Artist Agreement was no less than $5,699,901.64 as of October 4, 2019.

35.     From and after at least October 4, 2019, the total amount due under the 2017 Agreements has accrued, and is continuing to accrue, prejudgment interest at the legal rate of 10% per annum (which equates to a daily rate of $1,561.62).

**D.     The Notice of Default.**

36.     On December 5, 2019, AEG sent YSL and Mr. Williams a Notice of Default (the "Notice of Default") which provided written notice of such parties' respective defaults in their obligations under both the 2016 Agreements and the 2017 Agreements.   Neither YSL nor Mr. Williams has paid any portion of the above-alleged amounts owing under the 2016 Agreements and/or the 2017 Agreements.

**E.     The Security Agreement.**

37.     The 2017 Note included a security agreement, governed by California law, wherein YSL pledged certain collateral (the "YSL Collateral") to secure its obligations under the 2017 Note as follows:

**SECURITY AGREEMENT**

To secure the faithful and timely performance of [YSL]'s obligations hereunder and [YSL]'s obligations under the Artist Agreement, and all extensions, modifications, substitutions, replacements, and renewals of all such obligations (collectively, the "Secured Obligations"), [YSL] hereby grants to [AEG], a security interest in all of [YSL]'s right, title and interest in, to, and under the following properties, assets and rights, wherever located, whether now owned or hereafter acquired or arising (all collectively the "Collateral"): all accounts and general intangibles (including, without limitation, all

8

software, payment intangibles, trademarks and copyrights), documents and contracts, and all proceeds, replacements, substitutions, products, accessions, and increases of any thereof, in any form, as those terms are or may hereafter be defined in the California Commercial Code from time to time in effect.

38. AEG perfected its security interest in the YSL Collateral by filing a UCC financing statement with the Clerk of Superior Court, Fulton County, Georgia, Instrument No. 0602017-06796, recorded on September 13, 2017.

39. Pursuant to the terms of the 2017 Guaranty, which was governed by California law, Mr. Williams agreed "to perform and discharge all of [YSL]'s obligations, warranties and undertakings contained in the [2017 Artist] Agreement (which for the avoidance of doubt includes the [2017] Note)." Mr. Williams pledged certain collateral (the "Mr. Williams Collateral") in favor of AEG to secure all of his obligations under the security agreement in the 2017 Guaranty, as set forth in Paragraph 5 of the 2017 Guaranty as follows:

> To secure all of its [*sic*] obligations hereunder, [Mr. Williams] hereby grants a security interest to [AEG] in all of [his] present and future right, title and interest in and to all of the following property, now owned or hereafter acquired:  all accounts, general intangibles (e.g., software, payment intangibles, trademarks and copyrights), documents and contracts and all proceeds, replacements, substitutions, products, accessions, and increases of any thereof, in any form, as those terms are or may hereafter be defined in the California Commercial Code from time to time in effect; and agrees to reasonably cooperate with [AEG]'s efforts to perfect such security interest in all such property.  [Mr. Williams] acknowledges and agrees that this Guaranty includes a security agreement[.]

40. AEG perfected its security interest in the Mr. Williams Collateral under the security agreement included in the 2017 Guaranty: (a) by filing a UCC financing statement with the Clerk of Superior Court, Fulton County, Georgia, Instrument No. 0602017-06797, recorded on September 13, 2017; and (b) in respect of those copyrights that have been registered with the U.S. Copyright Office, by sending to the U.S. Copyright Office by overnight mail on December 5, 2019, February 12, 2020, July 28, 2020, and February 12, 2021 Forms DCS (Document Cover Sheets) For Recordation of Documents under 17 U.S.C. §205 attaching a copy of the 2017

9

4830-1539-1704

Guaranty and identifying registered copyrights that were known to be in the name of Mr. Williams (the "Copyright Recordations") in which AEG stated that it held a security interest in such copyrights (but only as to Mr. Williams' interests in such copyrights). Attached hereto as Exhibits C, D, E, and F, respectively, are true and correct copies of the Copyright Recordations.

41.   AEG submitted a copy of the 2017 Guaranty to the U.S. Patent & Trademark Office for recordation in respect of the grant of a security interest in the YOUNG THUG registered mark; the security interest was recorded on December 5, 2019 at Reel/Frame 6809/0915. (Under the applicable law, however, recordation is unnecessary to perfect a security interest in a trademark.)

42.   According to the U.S. Copyright Office's database, YSLP (identified variously as "Young Stoner for Life Publishing," "Young Stoner Life Publishing," "Young Stoner Life Publishing LLC," and "Young Stoner Life Publshing [*sic*]) is a copyright claimant on 35 copyright registrations for music on which Mr. Williams is an identified author, with dates of publication ranging from 2017 through 2020. AEG is informed and believes, and based thereon alleges, that Mr. Williams may have purported to assign additional copyrights to YSLP that have not yet been registered with the Copyright Office, including the copyrights to songs to be included on Mr. Williams' soon-to-be released album Slime Language 2 (including No Pillows/Side to Side, Whippet, Latest Gucci, All Sin, King Size, Jewel Baby, Think Twice, Slatty, Take It to Trial, Hypnotizing Eyes, Down For You, and Chickened Out) (the "Slime Language 2 Copyrights"). (Together, any copyrights as to which YSLP is the registered copyright owner or that have purportedly been assigned by Mr. Williams to YSLP are referred to herein collectively as the "YSLP-Claimed Copyrights.") Attached hereto as Exhibit G is a true and correct copy of a spreadsheet with information from the U.S. Copyright Office's website that identifies the 35 copyright registrations on which YSLP is named as a copyright claimant as of the date of filing of this First Amended Complaint.

4830-1539-1704

43.     AEG is informed and believes, and based thereon alleges, that at the time that Mr. Williams purported to assign to YSLP some or all of the YSLP-Claimed Copyrights, such copyrights constituted collateral that was subject to the security agreement set forth in Paragraph 5 of the 2017 Guaranty because: (a) Mr. Williams held such copyrights as of July 10, 2017, the date of the 2017 Guaranty; or (b) such works were created after that date.  AEG is informed and believes that AEG's security interest in any such YSLP-Claimed Copyrights has priority over any interest that YSLP may claim in such copyrights because AEG's perfected security interest attached prior to any right acquired by YSLP in the YSLP-Claimed Copyrights.

44.     AEG is informed and believes that in addition to the copyrights identified in the attached Exhibits C through G that have been registered with the U.S. Copyright Office by Mr. Williams and/or YSLP, AEG has a perfected security interest in Mr. Williams' ownership interest in the Slime Language 2 Copyrights which have not yet been registered with the U.S. Copyright Office.

45.     In the Notice of Default, AEG demanded pursuant to Cal. Comm. Code § 9609 that YSL and Mr. Williams by no later than December 19, 2019: (a) assemble all collateral pledged to AEG; and (b) make available to AEG, via email, 13 categories of documents identified therein.  The requested documents would have allowed AEG to identify the collateral and to help maximize the recovery from exercising its rights to foreclosure on the YSL Collateral and/or the Mr. Williams Collateral.  In particular, AEG demanded that YSL and Mr. Williams provide the following categories of documents (which are collectively referred to as the "Collateral Documents"):

a.     All agreements whereby [YSL] or Mr. Williams have authorized the use of any YOUNG THUG mark including, without limitation, to sell merchandise  for any time period since July 10, 2017;

b.     Representative samples of merchandise sold under any YOUNG THUG mark for the period since July 10, 2017;

11

4830-1539-1704

c.     Registration certificates for all copyrights as to which Mr. Williams is identified as a copyright claimant;

d.     All correspondence with the U.S. Copyright Office with regard to any applications as to which Mr. Williams is identified as a copyright claimant and as to which registration certificates have not yet issued;

e.     Documents sufficient to identify any work as to which Mr. Williams is an author, in whole or in part, and as to which applications have not yet been submitted to the U.S. Copyright Office, other than works that are the subject of (a) a work-for-hire agreement or (b) an assignment pursuant to which Mr. Williams has given up ownership rights to the copyright in such work;

f.     All agreements whereby [YSL] or Mr. Williams have authorized the use of any copyrights owned by such party for any period since July 10, 2017;

g.     Documents sufficient to identify all amounts in excess of $10,000 that are owed to [YSL] or Mr. Williams now or in the future, including the name and contact information of the party that owes such money, the amounts owed and the payment deadlines;

h.     All royalty statements received by [YSL] or Mr. Williams that show amounts received by, accrued in favor of, credited to the account of or due in connection with any copyrights or trademarks owned by [YSL] or Mr. Williams on or after July 10, 2017;

i.     Any information and/or documentation [YSL or Mr. Williams] deems to be relevant in assessing the value of any YOUNG THUG mark that may be supplied to third parties to assist them in formulating a bid to acquire such mark at a foreclosure sale;

12

4830-1539-1704

j.      Any information and/or documentation that [YSL or Mr. Williams] you deem[s] to be relevant in assessing the value of any copyright owned by [YSL] or Mr. Williams, including, without limitation, the Known Registered Copyrights, that may be supplied to third parties to assist them in formulating a bid to acquire such copyright at a foreclosure sale;

k.      With respect to each copyright owned by [YSL] and/or Mr. Williams, the name, contact information and percentage ownership interest of any person or entity that co-owns such copyright;

l.      Any information and/or documentation that reflects the goodwill associated with the YOUNG THUG mark; and

m.      The name, street address, email address and representative of any third party who [YSL or Mr. Williams] believe[s] would have an interest in purchasing any of the pledged collateral in a foreclosure sale.

46.     Neither YSL nor Mr. Williams has provided AEG with any of the YSL Collateral or the Mr. Williams Collateral or any of the Collateral Documents requested in the Notice of Default, which is itself a default under the 2017 Agreements and the California Commercial Code.

**FIRST CLAIM FOR RELIEF**

**(Breach of the 2017 Artist Agreement (inclusive of the 2017 Note))**

**(Against YSL)**

47.     AEG refers to the allegations contained in paragraphs 1 through 46 above and incorporates them by reference as though fully set forth herein.

48.     The 2017 Artist Agreement (inclusive, for the avoidance of doubt, of the 2017 Note) is a valid and binding contract.

49.     AEG has performed all of its obligations under the 2017 Artist Agreement, unless excused.

4830-1539-1704

50.    YSL has breached the 2017 Artist Agreement (inclusive of the sums owing under the 2017 Note) by failing to pay the 2017 Principal Debt and the 2017 Interest Debt, which together equaled $5,336,201.64 as of October 4, 2019.

51.    YSL has also breached the 2017 Artist Agreement by failing to pay the 2017 Additional Debt, which equaled $363,700 as of October 4, 2019.

52.    As a direct and proximate result of YSL's breach of its obligations under the Artist Agreement (inclusive, for the avoidance of doubt, of the 2017 Note), AEG has suffered injury in the amount of at least $5,699,901.64 as of October 4, 2019.

53.    AEG is entitled to recover from YSL its damages in an amount according to proof, plus prejudgment interest from at least October 4, 2019.

54.    AEG is also entitled under the 2017 Note to recover its reasonable attorneys' fees incurred in enforcing such note.

## SECOND CLAIM FOR RELIEF

### (Breach of the 2017 Guaranty)

### (Against Mr. Williams and YSLP)

55.    AEG refers to the allegations contained in paragraphs 1 through 54 above and incorporates them by reference as though fully set forth herein.

56.    The 2017 Guaranty is a valid and binding contract.

57.    AEG has performed all of its obligations under the 2017 Guaranty, unless excused.

58.    Mr. Williams has breached the 2017 Guaranty by failing to pay AEG the 2017 Principal Debt, the 2017 Interest Debt, and the 2017 Additional Debt, which together equaled no less than $5,699,901.64 as of October 4, 2019.

59.    As a direct and proximate result of Mr. Williams' breach of his obligations under the 2017 Guaranty, AEG has suffered injury in the amount of at least $5,699,901.64 as of October 4, 2019.

14

4830-1539-1704

60.    AEG is entitled to recover from Mr. Williams (and his alter ego YSLP) its damages in an amount according to proof, plus prejudgment interest at the per annum rate of 10% from October 4, 2019.

## THIRD CLAIM FOR RELIEF

**(Breach of the 2016 Artist Agreement and the 2016 Note)**

**(Against YSL)**

61.    AEG refers to the allegations contained in paragraphs 1 through 60 above and incorporates them by reference as though fully set forth herein.

62.    The 2016 Artist Agreement and the 2016 Note are valid and binding contracts.

63.    AEG has performed all of its obligations under the 2016 Artist Agreement and the 2016 Note, unless excused.

64.    YSL has breached the 2016 Artist Agreement and the 2016 Note by failing to pay AEG the Total 2016 Debt, which equaled $126,324.60 as of August 29, 2019.

65.    As a direct and proximate result of YSL's breach of its obligations under the 2016 Artist Agreement and the 2016 Note, AEG has suffered injury in the amount of at least $126,324.60 as of August 29, 2019.

66.    AEG is entitled to recover from YSL its damages in an amount according to proof, plus prejudgment interest at the per annum rate of 10% from August 29, 2019.

67.    AEG is also entitled under the 2016 Note to recover its reasonable attorneys' fees incurred in enforcing such note.

## FOURTH CLAIM FOR RELIEF

**(Breach of the 2016 Guaranty)**

**(Against Mr. Williams and YSLP)**

68.    AEG refers to the allegations contained in paragraphs 1 through 67 above and incorporates them by reference as though fully set forth herein.

4830-1539-1704

69.    The 2016 Guaranty is a valid and binding contract.

70.    AEG has performed all of its obligations under the 2016 Guaranty, unless excused.

71.    Mr. Williams has breached the 2016 Guaranty by failing to pay AEG the Total 2016 Debt owed by YSL to AEG under the 2016 Artist Agreement and the 2016 Note, which equaled $126,324.60 as of August 29, 2019.

72.    As a direct and proximate result of Mr. Williams' breach of his obligations under the 2016 Guaranty, AEG has suffered injury in the amount of at least $126,324.60 as of August 29, 2019.

73.    AEG is entitled to recover from Mr. Williams (and his alter ego YSLP) its damages in an amount according to proof, plus prejudgment interest at the per annum rate of 10% from August 29, 2019.

## FIFTH CLAIM FOR RELIEF

### (For Specific Performance of Security Agreement in 2017 Note)

### (Against YSL)

74.    AEG refers to the allegations contained in paragraphs 1 through 73 above and incorporates them by reference as though fully set forth herein.

75.    AEG is informed and believes, and on that basis alleges, that YSL is presently the record owner of the YSL Collateral subject to the security agreement in the 2017 Note.

76.    AEG is the holder of the 2017 Note, as well as the beneficiary of the security agreement included in the 2017 Note.

77.    AEG has fully complied with and performed all provisions, terms, and conditions required of it under the 2017 Note.

78.    Pursuant to the security agreement included in the 2017 Note, YSL agreed, *inter alia*, that (a) it irrevocably assigned to AEG all interests in the YSL Collateral, and (b) AEG may, upon the occurrence of a default by YSL, collect the YSL Collateral (including rights to payments), exercise its rights as a lienholder under

the terms of the 2017 Note and the California Commercial Code, and apply any net proceeds against the amounts owed by YSL to AEG.

79.   As a result of YSL's breach of the 2017 Note, including the security agreement included therein, AEG is entitled to collect all amounts owing by YSL to AEG on the 2017 Note, to exercise all of its rights and remedies under (a) the 2017 Note and the security agreement contained therein and (b) the California Commercial Code, including, without limitation, AEG's right to require YSL to assemble and deliver to AEG the YSL Collateral and the Collateral Documentation relevant to the YSL Collateral.

80.   The 2017 Note provides that YSL will pay all costs of collection, including reasonable attorneys' fees and legal expenses, incurred by AEG to enforce its rights under that Note.

## SIXTH CLAIM FOR RELIEF

### (For Specific Performance of Security Agreement in 2017 Guaranty)
### (Against Mr. Williams and YSLP)

81.   AEG refers to the allegations contained in paragraphs 1 through 80 above and incorporates them by reference as though fully set forth herein.

82.   AEG is informed and believes, and on that basis alleges, that Mr. Williams is presently the record owner of the Mr. Williams Collateral subject to the security agreement in the 2017 Guaranty.

83.   AEG is the holder of the 2017 Guaranty, as well as the beneficiary of the security agreement included in the 2017 Guaranty.

84.   AEG has fully complied with and performed all provisions, terms, and conditions required of it under the 2017 Guaranty.

85.   Pursuant to the security agreement included in the 2017 Guaranty, Mr. Williams agreed, *inter alia*, that (a) he irrevocably assigned to AEG all interests in the Mr. Williams Collateral, and (b) AEG may, upon the occurrence of a default by Mr. Williams, collect the Mr. Williams Collateral (including rights to payments), exercise

17

its rights as a lienholder under the terms of the 2017 Note and the California Commercial Code, and apply any net proceeds against the amounts owed by Mr. Williams to AEG.

86.    As a result of Mr. Williams' breach of the 2017 Guaranty, including the security agreement included therein, AEG is entitled to collect from Mr. Williams (and his alter ego YSLP) all amounts owing by Mr. Williams to AEG on the 2017 Guaranty, and to exercise all of its rights and remedies under (a) the 2017 Guaranty, including those in the security agreement included therein and (b) the California Commercial Code, including, without limitation, AEG's right to require Mr. Williams to assemble and deliver to AEG all of the Mr. Williams Collateral and the Collateral Documentation relevant to the Mr. Williams Collateral.

## SEVENTH CLAIM FOR RELIEF

### (For Declaratory Relief)

### (Against YSLP and Mr. Williams)

87.    AEG refers to the allegations contained in paragraphs 1 through 86 above and incorporates them by reference as though fully set forth herein.

88.    An actual controversy has arisen and now exists relating to the rights and duties of AEG, on the one hand, and YSLP and Mr. Williams, on the other hand, in that AEG contends that:

(a)    Some or all of the YSLP-Claimed Copyrights constitute Mr. Williams Collateral under the security agreement included in the 2017 Guaranty because they were owned by Mr. Williams at the time of the 2017 Guaranty, or were acquired by Mr. Williams after the time of the 2017 Guaranty and prior to their alleged transfer by Mr. Williams to YSLP;

(b)    AEG's security interest in such YSLP-Claimed Copyrights takes priority over any interest that YSLP may hold in such copyrights and as a result thereof, YSLP's right, title, and interest in some or all of

18

4830-1539-1704

the YSLP-Claimed Copyrights are subject to AEG's security interest, and AEG is entitled to register its security interest on such YSLP-Claimed Copyrights with the U.S. Copyright Office;

(c)    AEG has the right, pursuant to the security agreement included in the 2017 Guaranty, to require that YSLP and Mr. Williams assemble such YSLP-Claimed Copyrights and turn them over to AEG;

(d)    AEG has the right, pursuant to the security agreement included in the 2017 Guaranty, to require that YSLP and Mr. Williams make documents available to AEG with regard to such YSLP-Claimed Copyrights; and

(e)    AEG is entitled to sell the Mr. Williams Collateral, including, but not limited to, the copyrights identified in the Copyright Recordations, the YSLP-Claimed Copyrights, the Slime Language 2 Copyrights, and the YOUNG THUG mark.

(f)    AEG is entitled to seek judicial foreclosure with regard to the YSL Collateral and the Mr. Williams Collateral, including, but not limited to, the copyrights identified in the Copyright Recordations, the YSLP-Claimed Copyrights, the Slime Language 2 Copyrights, and the YOUNG THUG mark.

89.    AEG is informed and believes, and based thereon alleges, that YSLP and Mr. Williams dispute AEG's contentions.

90.    AEG desires a judicial determination of its rights and duties, and a declaration that:

(a)    Some or all of the YSLP-Claimed Copyrights constitute Mr. Williams Collateral under the security agreement included in the 2017 Guaranty because they were owned by Mr. Williams at the time of the 2017 Guaranty, or were acquired by Mr. Williams after the time of the

19

2017 Guaranty, and prior to their alleged transfer by Mr. Williams to YSLP;

      (b)    AEG's security interest in such YSLP-Claimed Copyrights takes priority over any interest that YSLP may hold in such Copyrights and as a result thereof, YSLP's right, title, and interest in some or all of the YSLP-Claimed Copyrights are subject to AEG's security interest, and AEG is entitled to register its security interest on such YSLP-Claimed Copyrights with the U.S. Copyright Office;

      (c)    AEG has the right, pursuant to the security agreement included in the 2017 Guaranty, to require that YSLP and Mr. Williams assemble such YSLP-Claimed Copyrights and turn them over to AEG;

      (d)    AEG has the right, pursuant to the security agreement included in the 2017 Guaranty, to require that YSLP and Mr. Williams make documents available to AEG with regard to such YSLP-Claimed Copyrights; and

      (e)    AEG is entitled to seek judicial foreclosure with regard to the YSL Collateral and the Mr. Williams Collateral, including, but not limited to, the copyrights identified in the Copyright Recordations, the YSLP-Claimed Copyrights, the Slime Language 2 Copyrights, and the YOUNG THUG mark.

91.    A judicial declaration is necessary and appropriate at this time under the circumstances so that AEG, on the one hand, and YSLP and Mr. Williams, on the other hand, may ascertain their respective rights and duties in connection with the YSLP-Claimed Copyrights and potential judicial foreclosure.

4830-1539-1704

## **EIGHTH CLAIM FOR RELIEF**

### **(For Injunctive Relief)**

### **(Against Defendants)**

92.    AEG refers to the allegations contained in paragraphs 1 through 91 above and incorporates them by reference as though fully set forth herein.

93.    Defendants are in possession of: (a) the YSL Collateral, which is subject to the security agreement included in the 2017 Note; and (b) the Mr. Williams Collateral, which is subject to the security agreement included in the 2017 Guaranty.

94.    AEG is the secured party under the 2017 Note and the 2017 Guaranty.

95.    The security agreements included in the 2017 Note and the 2017 Guaranty provide, among other things, that upon the occurrence of any event of default, AEG may inspect and/or take possession of the YSL Collateral or the Mr. Williams Collateral, respectively.

96.    AEG therefore is entitled to, and seeks, a preliminary and permanent injunction against Defendants, and their officers, agents, partners, representatives, and employees, prohibiting them, their agents, and anyone acting on their behalf or at their direction, from: (a) transferring the YSL Collateral or the Mr. Williams Collateral; or (b) interfering with AEG's rights to foreclose on the YSL Collateral or the Mr. Williams Collateral.

## **NINTH CLAIM FOR RELIEF**

### **(Judicial Foreclosure)**

### **(Against YSL and Mr. Williams)**

97.    AEG refers to the allegations contained in paragraphs 1 through 96 above and incorporates them by reference as though fully set forth herein.

98.    To secure YSL's faithful performance of his obligations under the 2017 Note and Mr. Williams' faithful performance of his obligations under the 2017 Guaranty, YSL and Mr. Williams, respectively, agreed to provide AEG with the security interests in the YSL Collateral and the Mr. Williams Collateral, respectively

4830-1539-1704

(including, without limitation, all trademarks and copyrights). Such security interests have been duly recorded as alleged in paragraphs 41 and 42 above.

99. AEG is the lawful owner and holder of the 2017 Note and the 2017 Guaranty.

100. As a result of the Opt-Out Notice, the term of the 2017 Agreement ended on September 4, 2019, and the 2017 Note Maturity Date occurred on October, 4, 2019. On December 5, 2019, AEG sent YSL and Mr. Williams the Notice of Default.

101. As alleged above, YSL and Mr. Williams have defaulted on their obligations under the 2017 Note and the 2017 Guarantee, respectively, and are indebted to AEG under the 2017 Note and the 2017 Guarantee, respectively, in the amount of $5,336,201.64 as of October 4, 2019, plus interest thereon from that date.

102. AEG has made diligent inquiry and alleges, on information and belief, that: (a) no other party has claimed an interest against the property in which AEG asserts a security interest; and (b) there are no parties with a recorded interest in such property to be named in this Complaint.

103. Accordingly, AEG is entitled to seek judicial foreclosure with regard to the YSL Collateral and the Mr. Williams Collateral, including, but not limited to, the copyrights identified in the Copyright Recordations, the YSLP-Claimed Copyrights, the Slime Language 2 Copyrights, and the YOUNG THUG mark.

104. AEG expressly reserves the right: (a) to elect to pursue remedies in the alternative to or in addition to a judicial foreclosure with regard to the YSL Collateral and the Mr. Williams Collateral, including, but not limited to, non-judicial foreclosure pursuant to the Uniform Commercial Code; and (b) to seek an Order from this Court confirming the propriety and effect of any such alternative remedy or remedies that AEG may choose to pursue.

4830-1539-1704

## TENTH CLAIM FOR RELIEF

### (Fraudulent Representation)

### (Cal. Civ. Code § 1710(1))

### (Against Defendants)

105.    AEG refers to the allegations contained in paragraphs 1 through 104 above and incorporates them by reference as though fully set forth herein.

106.    In order to induce AEG to enter into the 2017 Agreements and to advance money to YSL thereunder: (a) YSL represented in the 2017 Artist Agreement that it and Mr. Williams together had a sufficient net worth to comply with their respective obligations under the 2017 Note and the 2017 Guaranty; and (b) Mr. Williams represented in the 2017 Guaranty that all of the representations, warranties, and agreements of YSL contained in the 2017 Artist Agreement were and would remain true and correct.

107.    AEG is informed and believes, and based thereon alleges, that these representations were false when made in that at the time of such representations, YSL and Mr. Williams together did not have a sufficient net worth to comply with their respective obligations under the 2017 Note and the 2017 Guaranty.

108.    AEG reasonably relied upon these false representations in entering into the 2017 Agreements and in advancing money to YSL.  Had AEG known that YSL and Mr. Williams together did not have a sufficient net worth to comply with their respective obligations under the 2017 Note and the 2017 Guaranty, AEG would not have entered into the 2017 Agreements, nor would it have advanced money to YSL.

109.    As a direct and proximate result of the fraud of YSL and Mr. Williams, AEG has suffered substantial injury and continues to suffer substantial injury.

110.    AEG is entitled to recover from YSL and Mr. Williams (and his alter ego YSLP) the damages sustained by it as a result of the fraud of YSL and Mr. Williams. The damages suffered by AEG are in an amount not yet ascertained but to be proven at trial.

4830-1539-1704

111.   AEG is entitled to the imposition of a constructive trust with regard to any proceeds of the monies paid by AEG to YSL pursuant to the 2017 Agreements.

112.   The conduct of YSL and Mr. Williams constitutes oppression, fraud, and/or malice within the definition of Cal. Civ. Code § 3294, and was done with a willful and conscious disregard of AEG's rights.  By reason of such conduct, AEG is entitled to recover from YSL and Mr. Williams (and his alter ego YSLP) punitive damages determined as provided by law, including a consideration of the financial condition of YSL and Mr. Williams.

## ELEVENTH CLAIM FOR RELIEF

### (Fraudulent Promises Made Without Intent to Perform)

### (Cal. Civ. Code § 1710(4))

### (Against Defendants)

113.   AEG refers to the allegations contained in paragraphs 1 through 112 above and incorporates them by reference as though fully set forth herein.

114.   In order to induce AEG to enter into the 2017 Agreements and to advance money to YSL thereunder, YSL and Mr. Williams told AEG that they would be performing their respective obligations under the 2017 Artist Agreement and the 2017 Guaranty with regard to, *inter alia*: (a) payment of monies owed to AEG pursuant to the 2017 Agreements; and (b) AEG's exclusive right to promote live concert performances by Mr. Williams throughout the world for a stated term.

115.   AEG is informed and believes, and based thereon alleges, that these representations were false when made in that at the time of such representations, YSL and Mr. Williams did not intend: (a) to pay monies owed to AEG pursuant to the 2017 Agreements; or (b) to honor AEG's exclusive right to promote live concert performances by Mr. Williams throughout the world for a stated term.

116.   AEG reasonably relied upon these false representations in entering into the 2017 Agreements and advancing money to YSL thereunder.  Had AEG known that YSL and Mr. Williams intended not to pay monies owed to AEG pursuant to the 2017

4830-1539-1704

Agreements or not to honor AEG's exclusive right to promote live concert performances by Mr. Williams throughout the world for a stated term, AEG would not have entered into the 2017 Agreements, nor would it have advanced money to YSL.

117.    As a direct and proximate result of the fraud of YSL and Mr. Williams, AEG has suffered substantial injury and continues to suffer substantial injury.

118.    AEG is entitled to recover from YSL and Mr. Williams (and his alter ego YSLP) the damages sustained by it as a result of the fraud of YSL and Mr. Williams. The damages suffered by AEG are in an amount not yet ascertained but to be proven at trial.

119.    AEG is entitled to the imposition of a constructive trust with regard to any proceeds of the monies paid by AEG to YSL pursuant to the 2017 Agreements.

120.    The conduct of YSL and Mr. Williams constitutes oppression, fraud, and/or malice within the definition of Cal. Civ. Code § 3294, and was done with a willful and conscious disregard of AEG's rights.  By reason of such conduct, AEG is entitled to recover from YSL and Mr. Williams (and his alter ego YSLP) punitive damages determined as provided by law, including a consideration of the financial condition of YSL and Mr. Williams.

## **PRAYER FOR RELIEF**

WHEREFORE, AEG requests judgment in its favor, and against YSL, Mr. Williams, and YSLP, as follows:

(1)    For damages in an amount according to proof;

(2)    For exemplary damages as authorized by law;

(3)    For the imposition of a constructive trust;

(4)    For prejudgment interest;

(5)    For an Order adjudging that AEG is entitled to immediate and exclusive possession of the YSL Collateral and the Mr. Williams Collateral for the purpose of exercising its rights as a lienholder under the

4830-1539-1704

terms of the 2017 Note and the 2017 Guaranty, respectively, and the California Commercial Code;

(6)    For an Order (a) requiring Defendants to cease disposing of the YSL Collateral and the Mr. Williams Collateral (including, but not limited to, the copyrights identified in the Copyright Recordations, the YSLP-Claimed Copyrights, the Slime Language 2 Copyrights, and the YOUNG THUG mark), to assemble such Collateral, to provide AEG with the requested Collateral Documents related to such Collateral and any other documents the Court deems appropriate, and to assemble and turn over all of the Collateral to AEG for the purpose of exercising its rights as a lienholder under the terms of the 2017 Note and the 2017 Guaranty, respectively, and the California Commercial Code, and (b) otherwise awarding such specific performance as this Court deems just and proper;

(7)    For a declaration that:

(a)    Some or all of the YSLP-Claimed Copyrights constitute Mr. Williams Collateral under the security agreement included in the 2017 Guaranty because they were owned by Mr. Williams at the time of the 2017 Guaranty, or were acquired by Mr. Williams after the time of the 2017 Guaranty and prior to their alleged transfer by Mr. Williams to YSLP;

(b)    AEG's security interest in such YSLP-Claimed Copyrights takes priority over any interest that YSLP may hold in such Copyrights and as a result thereof, YSLP's right, title, and interest in some or all of the YSLP-Claimed Copyrights are subject to AEG's security interest, and AEG

26

is entitled to register its security interest on such YSLP-Claimed Copyrights with the U.S. Copyright Office;

(c)     AEG has the right, pursuant to the security agreement included in the 2017 Guaranty, to require that YSLP and Mr. Williams assemble such YSLP-Claimed Copyrights and turn them over to AEG so that AEG may exercise its rights as a lienholder under the terms of the 2017 Note and the 2017 Guaranty, respectively, and the California Commercial Code;

(d)     AEG has the right, pursuant to the security agreement included in the 2017 Guaranty, to require that YSLP and Mr. Williams make documents available to AEG with regard to such YSLP-Claimed Copyrights including, without limitation, the Collateral Documents requested by AEG that relate to the YSLP-Claimed Copyrights; and

(e)     AEG is entitled to conduct a judicial foreclosure with regard to the YSL Collateral and the Mr. Williams Collateral, including, but not limited to, the copyrights identified in the Copyright Recordations, the YSLP-Claimed Copyrights, the Slime Language 2 Copyrights, and the YOUNG THUG mark.

(8)     For a preliminary and permanent injunction against Defendants, and their officers, agents, partners, representatives, and employees, prohibiting them, their agents, and anyone acting on their behalf or at their direction, from (a) transferring the YSL Collateral or the Mr. Williams Collateral, or (b) interfering with AEG's rights to foreclose on the YSL Collateral or the Mr. Williams Collateral (including, but not limited to, the copyrights identified in the Copyright Recordations, the

4830-1539-1704

1  YSLP-Claimed Copyrights, the Slime Language 2 Copyrights, and the

2  YOUNG THUG mark);

3  (9)    For an Order:

4  (a)    adjudging that the YSL Collateral and the Mr.

5  Williams Collateral (including, but not limited to, the

6  copyrights identified in the Copyright Recordations, the

7  YSLP-Claimed Copyrights, the Slime Language 2

8  Copyrights, and the YOUNG THUG mark) be foreclosed

9  upon, that such property be sold by a levying officer and/or

10  a receiver to be appointed by the Court, that the proceeds of

11  the sale be applied in payment of the amounts due to AEG,

12  and that YSL and Mr. Williams and any person claiming

13  under either of them (whether a creditor, claimant under a

14  junior security interest, purchaser, lienholder, or otherwise)

15  be barred and foreclosed from all rights, claims or interests

16  in the YSL Collateral or the Mr. Williams Collateral, or any

17  part of such collateral;

18  (b)    adjudging that YSL and Mr. Williams are liable

19  for payment of the obligations set forth in the 2017 Note and

20  the 2017 Guarantee and secured therein, and that a

21  deficiency judgment may be ordered following sale of some

22  or all of the YSL Collateral and/or the Mr. Williams

23  Collateral upon request therefore by AEG;

24  (c)    directing the levying officer and/or receiver, as

25  applicable, to execute all documents that are necessary or

26  appropriate to convey to any purchaser at the sale of title to

27  the applicable YSL Collateral and/or the applicable Mr.

28  Williams Collateral; and

4830-1539-1704

(d)    requiring the payment of administrative fees and costs by Defendants;

(10)    For an Order confirming the propriety and effect of any alternative remedy or remedies that AEG may choose to pursue in the alternative to or in addition to a judicial foreclosure with regard to the YSL Collateral or the Mr. Williams Collateral (including, but not limited to, the copyrights identified in the Copyright Recordations, the YSLP-Claimed Copyrights, the Slime Language 2 Copyrights, and the YOUNG THUG mark), including, but not limited to, non-judicial foreclosure pursuant to the Uniform Commercial Code;

(11)    For attorneys' fees as authorized by contract or law;

(12)    For costs and expenses of suit; and

(13)    For such other and further relief as the Court deems just and proper.

Dated:  February 18, 2021          KATHLEEN JORRIE
                                   JEFFREY D. WEXLER
                                   PILLSBURY WINTHROP SHAW PITTMAN LLP


                                    /s/ Kathleen Jorrie
                                   Kathleen Jorrie
                                   Attorneys for Plaintiff AEG Presents LLC

29

4830-1539-1704

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and Local Rule 38-1, Plaintiff AEG Presents LLC hereby demands a trial by jury.


Dated:   February 18, 2021        KATHLEEN JORRIE
                                  JEFFREY D. WEXLER
                                  PILLSBURY WINTHROP SHAW PITTMAN LLP



                                    /s/ Kathleen Jorrie
                                  _____
                                  Kathleen Jorrie
                                  Attorneys for Plaintiff AEG Presents LLC

30