1  Kathleen Jorrie (SBN 121578)
   Jeffrey D. Wexler (SBN 132256)
2  PILLSBURY WINTHROP SHAW PITTMAN LLP
   725 South Figueroa Street, Suite 3600
3  Los Angeles, CA 90017-5524
   Telephone: 213.488.7100
4  Facsimile: 213.629.1033
   kathy.jorrie@pillsburylaw.com
5  jeffrey.wexler@pillsburylaw.com

6  Attorneys for Plaintiff AEG Presents LLC

7  Hayden R. Pace (SBN 219627)
   STOKES WALKER, ALC
8  One Harbor Drive, Suite 211
   Sausalito, CA 94965
9  Telephone: 415.943.9471
   Facsimile: 619.232.4840
10 hpace@stokeswagner.com

11 Attorney for Defendants Jeffery Lamar Williams,
   YSL Touring LLC, and Young Stoner Life Publishing, LLC

12

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15                    WESTERN DIVISION

16

17 | AEG PRESENTS LLC, a Delaware limited liability company, | Case No. 2:20-cv-11601-MRA (PVCx) |
|---|---|
| Plaintiff, | **JOINT CASE MANAGEMENT STATEMENT PURSUANT TO REASSIGNMENT ORDER [Dkt. 51]** |
| vs. | |
| YSL TOURING LLC, a Georgia limited liability company; JEFFERY LAMAR WILLIAMS, an individual; and YOUNG STONER LIFE PUBLISHING, LLC, a Georgia limited liability company, | |
| Defendants. | |

1

4886-1798-4169

Pursuant to the Court's February 27, 2024 Reassignment Order [Dkt. 51], plaintiff AEG Presents LLC ("AEG") and defendants YSL Touring LLC ("YSL"), Jeffery Lamar Williams ("Mr. Williams"), and Young Stoner Life Publishing, LLC ("YSLP") (collectively, the "YSL Defendants") respectfully submit this Joint Case Management Statement.

### A. Date the Action was Filed.

This action was filed on December 20, 2020.

### B. The Parties.

AEG is a concert promoter. Mr. Williams is a rapper, singer, and songwriter who is professionally known as Young Thug. YSL is Mr. Williams' loan-out company, which enters into contracts for performances by Mr. Williams. YSLP is Mr. Williams' publishing company, which owns the copyrights to certain of his works.

### C. Summary of Claims.

AEG's First Amended Complaint (the "Complaint") includes 11 claims for relief: (1) the First Claim for Relief for Breach of the 2017 Artist Agreement (against YSL); (2) the Second Claim for Relief for Breach of the 2017 Guaranty (against Mr. Williams and YSLP); (3) the Third Claim for Relief for Breach of the 2016 Artist Agreement and the 2016 Note (against YSL); (4) the Fourth Claim for Relief for Breach of the 2016 Guaranty (against Mr. Williams and YSLP); (5) the Fifth Claim for Relief for Specific Performance of Security Agreement in 2017 Note (against YSL); (6) the Sixth Claim for Relief for Specific Performance of Security Agreement in 2017 Guaranty (against Mr. Williams and YSLP); (7) the Seventh Claim for Declaratory Relief (against YSLP and Mr. Williams) as to AEG's rights under a security agreement to certain copyrights claimed by YSLP; (8) the Eighth Claim for Injunctive Relief (against all Defendants); (9) the Ninth Claim for Judicial Foreclosure (against YSL and Mr. Williams); (10) the Tenth Claim for Relief for Fraudulent

4886-1798-4169

Representation (against all Defendants); and (11) the Eleventh Claim for Relief for Fraudulent Promises Made Without Intent to Perform (against all Defendants).

### D. Brief Description of Underlying Events.

In 2016, AEG and YSL entered into an Artist Agreement dated as of November 8, 2016 pursuant to which, among other things, (1) YSL agreed to grant AEG the exclusive right to promote 20 concert performances by Mr. Williams in North America during a stated term and (2) AEG made an advance payment to YSL in the amount of $300,000 to be earned at an agreed rate across the 20 concert performances. YSL executed a promissory note dated as of October 14, 2016 in the original principal amount of $300,000 in favor of AEG in connection with the 2016 Artist Agreement. On or about October 14, 2016, Mr. Williams executed an Inducement Letter (Guaranty) (the "2016 Guaranty") in connection with the 2016 Note.

AEG contends – and Defendants dispute – that YSL and Mr. Williams owe AEG the principal amount of $126,324.50 plus interest under the 2016 Artist Agreement, the 2016 Note, and the 2017 Guaranty, which principal debt is comprised of an unearned portion of the $300,000 advance in the amount of $120,000 and $6,324.60 in vendor payments above artist earnings owed by YSL.

In 2017, AEG and YSL entered into an Artist Agreement dated as of July 10, 2017 pursuant to which, among other things, (1) YSL agreed to grant AEG the exclusive right to promote live concert performances by Mr. Williams throughout the world during a stated term, (2) AEG made an advance payment to YSL in the amount of $5,250,000 (the "2017 Advance"), and (3) YSL and Mr. Williams agreed to pay back such 2017 Advance at an agreed rate across concert performances promoted or otherwise approved by AEG and as otherwise required under the 2017 agreements.  In connection with the 2017 Artist Agreement, YSL executed a Promissory Note dated as of July 10, 2017 in the original principal amount of $5,250,000 in favor of AEG, and Mr. Williams executed an Inducement Letter (Guaranty) wherein he guaranteed YSL's obligations under the 2017 Artist Agreement and the 2017 Note.

3

AEG contends that YSL never repaid AEG any portion of the $5,250,000 in principal owed under the 2017 Note, and that YSL received at least $363,700 in revenue from Mr. Williams' concert performances promoted by a third-party promoter that it was required but failed to pay AEG under the terms of the 2017 Artist Agreement. Under the terms of the 2017 Artist Agreement, AEG had the right to opt out of the continued promotion of Tour Events and to end the term early after 18 months after the effective date of the 2017 Artist Agreement; as alleged in the Complaint, YSL and Mr. Williams had agreed, in the event AEG exercised such opt-out right, to repay to AEG all of the $5,250,000 principal sum owing under the 2017 Note plus accrued interest, minus the sum of $250,000.

As alleged in the Complaint, on August 29, 2019, AEG delivered to YSL and Mr. Williams a Notice opting out of the 2017 Artist Agreement, informing them that, as a result of the opt-out, YSL and Mr. Williams owed AEG the principal balance of $5,000,000 under the 2017 Note (after the $250,000 credit), plus accrued interest.

AEG contends that as of August 29, 2019, (1) YSL and Mr. Williams owed AEG $5,699,901.64 under the 2017 Artist Agreement and the 2017 Note, which debt was comprised of (a) the principal balance of the 2017 Note in the amount of $5,000,000, (b) interest that had accrued on the unpaid principal amount owing under the 2017 Note at the rate of 6 percent per annum as of August 29, 2019, and (c) the sum of $363,700 due and owing under the 2017 Artist Agreement as the result of YSL's failure to pay AEG its share of revenues received by YSL for Mr. Williams' concert performances promoted by a third-party promoter. AEG contends that YSL and Mr. Williams are required by the 2017 agreements to pay AEG such amounts plus interest accruing after August 29, 2019, less approximately $500,000 recovered by AEG through notices sent pursuant to Cal. Comm. Code § 9406 (explained in further detail below). YSL Defendants dispute that they are obliged to pay such amounts.

In respect of the 2017 Artist Agreement, AEG further contends – and YSL Defendants dispute – that as of the time of the 2017 agreements, YSL and

Mr. Williams together did not have a sufficient net worth to comply with their respective obligations under those agreements, and that they falsely represented that they had such net worth. AEG also contends – and Defendants dispute – that as of the time of the 2017 agreements YSL and Mr. Williams did not intend to perform their respective obligations under the 2017 agreements with regard to (a) paying monies owed to AEG pursuant to those agreements and (b) honoring AEG's exclusive right to promote live concert performances by Mr. Williams throughout the world for a stated term.

The 2017 Note and the 2017 Guaranty included security agreements in which YSL and Mr. Williams, respectively, pledged certain collateral to secure their respective obligations under the 2017 Note and the 2017 Guaranty. AEG perfected its security interests. Among other collateral, YSL and Mr. Williams pledged general intangibles (including, without limitation, all payment intangibles, trademarks and copyrights). AEG contends – and YSL Defendants dispute – that it has a security interest in certain collateral of YSL and Mr. Williams, as well as in certain copyrights assigned by Mr. Williams to YSLP at a time when AEG had a security interest in such copyrights.

As alleged in the Complaint, in a December 5, 2019 Notice of Default, AEG demanded that YSL and Mr. Williams assemble all collateral pledged to AEG and provide AEG with 13 categories of documents; neither YSL nor Mr. Williams provided such collateral or documents. Thus far, AEG has recovered, through the delivery of notices sent pursuant to Cal. Comm. Code § 9406 ("9406 Notices"), approximately $500,000 from third-party account debtors that owed money to YSL.

### E. Description of Relief Sought and Damages Claimed.

As set forth in more detail in the prayer to the First Amended Complaint [Dkt. 10], AEG seeks, *inter alia*: (1) its damages according to proof; (2) exemplary damages; (3) imposition of a constructive trust; (4) prejudgment interest; (5) an Order adjudging that AEG is entitled to immediate possession of collateral of YSL and

Mr. Williams; (6) an Order requiring Defendants to cease disposing of that collateral, to assemble that collateral, to provide AEG with documents concerning the collateral, and to assemble and turnover the collateral to AEG; (7) a declaration as to AEG's security interest in and rights as to certain copyrights claimed by YSLP; (8) an injunction against transferring collateral or interfering with AEG's rights to foreclose on that collateral; (9) an Order adjudging that the collateral may be foreclosed upon and sold, with the sales proceeds being applied towards the amounts due to AEG; (10) an Order confirming the propriety and effect of any alternative remedy or remedies that AEG may choose to pursue; (11) attorneys' fees as authorized by contract or law; (12) costs and expenses of suit; and (13) such other and further relief as the Court deems just and proper.

AEG plans to compute its damages as follows: (1) principal of $126,324.60 plus prejudgment interest beginning to accrue as of August 29, 2019; and (2) principal of $5,699,901.64 plus prejudgment interest beginning to accrue as of August 29, 2019 on the amounts due under the 2017 agreements, minus the approximately $500,000 recovered by AEG through 9406 Notices.

### F. Status of Discovery and Cut-Off Dates.

On November 9, 2021, AEG served its First Document Request, its First Set of Interrogatories, and its First Set of Requests for Admissions on Defendants; Defendants served their responses to that discovery on January 14, 2022. On April 8, 2022, AEG served its Second Document Request on Defendants; Defendants served their response to that document request on May 23, 2022. No other written discovery has been propounded. No depositions have yet been taken. The parties each anticipate taking a number of depositions. As discussed further herein, Mr. Williams' criminal charges and incarceration have presented significant discovery management issues.

Under the February 9, 2024 Civil Trial Scheduling Order [Dkt. 47], the current discovery cut-off date is August 12, 2024.

G. **Procedural History.**

AEG filed its initial Complaint [Dkt. 1] on December 23, 2020 and its First Amended Complaint [Dkt. 10] on February 18, 2021. There has been no motion practice. AEG plans to file a motion for summary judgment or summary adjudication in respect of some or all of its claims after additional discovery is conducted.

The parties held a settlement conference before the Honorable Pedro V. Castillo on September 14, 2021 and September 22, 2021. The parties were unable to reach a settlement, but they continued to discuss settlement.

The Court, the Honorable Virginia A. Phillips presiding, filed its Civil Trial Scheduling Order [Dkt. 28] on July 20, 2021. In stipulated Orders dated November 10, 2021 and [Dkts. 34, 38], the Court continued the as-yet unexpired pretrial and trial dates by four months and three months, respectively, to allow the parties to focus on settlement negotiations, while deferring some – but not all – of the discovery and motion practice during such negotiations. In stipulated Orders dated July 29, 2022 and July 5, 2023 [Dkts. 40, 42], the Court granted two one-year extensions of the as-yet unexpired pretrial and trial dates because of Mr. Williams' pending criminal proceedings.

In a February 8, 2024 Notice of Reassignment [Dkt. 43], the case was reassigned to the Honorable Percy Anderson. In a February 9, 2024 Order [Dkt. 45], the Court asked the parties to show cause as to the existence of diversity jurisdiction; in a February 20, 2024 Order [Dkt. 49], the Court discharged the Order to Show Cause.

In a February 9, 2024 Civil Trial Scheduling Order [Dkt. 47], the Court modified the pretrial and trial dates.

H. **Other Deadlines in Place.**

The Court's February 9, 2024 Civil Trial Scheduling Order [Dkt. 47] set the following deadlines in addition to the discovery cut-off date of August 12, 2024 (the Order also set initial and rebuttal expert deadlines eight weeks and five weeks,

4886-1798-4169

respectively, before that date): (1) a motion hearing cut-off date of August 19, 2024; (2) a Final Pretrial Conference on September 20, 2024 at 1:30 p.m.; and (3) a Jury Trial on October 22, 2024 at 9:00 a.m.

## I. Consent to Magistrate Judge for Trial.

The parties have not agreed to consent to a magistrate judge for trial.

## J. Statement of Counsel re Discussions with Client.

Counsel for the parties have: (1) discussed the magistrate judge consent program with their respective clients; and (2) met and conferred to discuss the consent program and selection of a magistrate judge.

## K. Immediate Need for Case Management Conference.

In a Joint Request for Telephonic Scheduling Conference Hearing Pursuant to Reassignment Order on March 5, 2024 [Dkt. 52], the parties have asked the Court to schedule a telephonic Scheduling Hearing to discuss scheduling new pretrial and trial dates that take into consideration the fact that Mr. Williams is incarcerated in Georgia and is currently engaged in a criminal trial in Fulton County Superior Court, Georgia on state RICO charges, which trial commenced on January 4, 2023 with jury selection; opening statements began on approximately November 27, 2023. The trial could go into 2025 as there are more than 400 witnesses on the State's shortened witness list (and more than 700 witnesses on the State's official witness list), and Mr. Williams's criminal counsel estimates that he will have about 50 witnesses on his witness list). Mr. Williams continues to be held in jail without bond.

The parties agree that there is good cause and extraordinary circumstances for continuing the current pretrial and trial dates based upon Mr. Williams' ongoing jury trial and incarceration, because Mr. Williams' unavailability: (1) prevents AEG from conducting necessary discovery, including taking Mr. Williams' deposition; (2) makes it very difficult for counsel for the YSL Defendants to respond to discovery and to prepare and develop their case; and (3) makes impracticable the filing by AEG of a motion for summary adjudication or summary judgment (given that AEG has not

completed its discovery and that the YSL Defendants could oppose such motion by filing a declaration pursuant to Fed. R. Civ. P. 56(d) arguing that Mr. Williams' pending criminal trial prevents them from presenting facts essential to justify their opposition to any such motion).

While the first two continuances of pretrial and trial dates for a total of seven months were based on the parties' request that the Court continue such dates to allow the parties to focus on settlement negotiations, the third and fourth continuances of pretrial and trial dates – for a total of two years – were based on the pendency of Mr. Williams' criminal proceedings.

The parties anticipate that once Mr. Williams' pending criminal trial is completed, they will need six months to complete discovery, including Mr. Williams' deposition, and additional time thereafter to get any motions for summary judgment or summary adjudication on file for hearing by the motion hearing cut-off date. The parties agree that the as-yet-unexpired pretrial and trial dates should be postponed because of Mr. Williams' ongoing jury trial and incarceration to ensure that the parties have time to complete discovery, and to file and to have the Court decide dispositive motions after the anticipated completion of Mr. Williams' criminal trial and in advance of any motion cutoff date.

Dated: March 13, 2024  

KATHLEEN JORRIE  
JEFFREY D. WEXLER  
PILLSBURY WINTHROP SHAW PITTMAN LLP  

 /s/ *Kathleen Jorrie*  
Kathleen Jorrie  
Attorneys for Plaintiff AEG Presents LLC

4886-1798-4169

Dated: March 13, 2024

HAYDEN R. PACE
STOKES WAGNER ALC

/s/ *Hayden R. Pace*
Hayden R. Pace
Attorneys for Defendants YSL Touring LLC. Jeffery Lamar Williams and Young Stoner Life Publishing, LLC

## ATTESTATION OF COUNSEL

Pursuant to Local Rule 5-4.3.4(a)(2)(i), I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

/s/ *Kathleen A. Jorrie*
Kathleen A. Jorrie